# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT HURRIGAN, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOP TURF, INC., a Domestic Profit Corporation, and DANA SCOTT BRYAN, individually,<br><br>Defendants. | CIVIL ACTION FILE NO:<br>1:12-cv-03633-RWS |

## AGREEMENT AND GENERAL RELEASE

### 1. Parties And Released Parties:

This document sets forth the terms and conditions of the Agreement and General Release (hereinafter "Agreement") by and between the Plaintiffs Robert Hurrigan and Edwin Lebron (hereinafter "the Releasors" or "Releasor Hurrigan" and "Releasor Lebron") and Top Turf, Inc. and Dana Scott Bryan (hereinafter "the Company"). The term "Releasees" as used herein shall be defined as the Company and all of its related entities, divisions and affiliates, and all of their current and former officers, directors, employees, shareholders/partners, servants, agents, officials, insurers, and attorneys, in their official and individual capacities, together with their predecessors, successors and assigns, both jointly and severally, as well as Dana Scott Bryan and Kevin Bryan, and all of their agents, insurers, attorneys and employees, together with their predecessors, successors and assigns, both jointly and severally. In consideration of the mutual covenants and agreements set forth below, the parties agree as follows:

### 2. Termination Of Employment:

A. Releasor Hurrigan agrees and covenants that he will not apply or reapply for a position of employment with the Releasees nor will he at any time seek to utilize any of the professional services of Releasees.

B. Releasor Lebron agrees and covenants that his employment with the Company ended on September 28, 2011, and that he has not and will not, at any time, apply or reapply for a position of employment with the Releasees, nor will he at any time seek to utilize

any of the professional services of Releasees.

3. **Payment And Consideration:**

    A.    The Company shall pay to the Releasors a total payment of $18,000.00. Of this amount, $3,927.63 represents backpay damages to Releasor Hurrigan and $3,927.63 represents liquidated damages to Releasor Hurrigan, $2,472.37 represents backpay to Releasor Lebron, and $2,472.37 represents liquidated damages to Releasor Lebron. The Company also shall pay Releasor Hurrigan and Releasor Lebron a total of $100 each for other alleged claims, including the Releasor's claims of breach of contract, emotional distress, anxiety, humiliation, pain and suffering, embarrassment, mental anguish and severe emotional distress. Notwithstanding the foregoing, nothing in this Agreement shall be construed as a payment to Releasor Hurrigan related to his ongoing Workers Compensation claim. Additionally, the Parties have agreed that a reasonable attorney's fee and expense in this case for the Releasors' counsel is $5,000.00.[1]

    B.    The amount for the Releasors' back pay, as referenced in Paragraph 3(A), shall be paid by the Company in checks made payable to "Robert Hurrigan" and "Edwin Lebron" and shall be issued within fourteen (14) business days after the Court issues its notice of approval of the settlement of this matter (including this Agreement). The parties recognize and agree that the back pay portion of the payment to the Releasors is subject to applicable taxes, tax levies and withholdings.

The amount for the Releasors' other claims, and liquidated damages, as referenced in Paragraph 3(A), shall be paid by the Company in checks made payable to "Robert Hurrigan" and "Edwin Lebron" and shall be issued within fourteen (14) business days after the Court's notice of approval of the settlement of this matter (including this Agreement). The parties recognize and agree that the other claims portion of the payment to Releasor Hurrigan is subject to applicable tax levies.

The amount for attorneys' fees and expenses shall be paid by the Company in a separate check made payable to "Morgan & Morgan, P.A." and shall be issued within fourteen (14) days after the Court issues its notice of approval of the settlement of this matter (including this Agreement).

    C.    The Parties acknowledge that the Releasors will promptly file the Joint Motion for Court Review and Approval of Settlement Agreement and Dismissal of Case With Prejudice in the form attached to this Agreement as Exhibit A (hereinafter "Joint Motion").

    D.    The Releasors and their counsel acknowledge and agree that, in the event the Court denies the Parties' Joint Motion and the Parties cannot, thereafter, secure court approval of a mutually agreeable settlement agreement within forty-five (45) days of the Court's Order denying the Joint Motion, this Agreement shall be null and void.

---

[1] Due to Robert Hurrigan's IRS tax levy, the net payments payable to Robert Hurrigan will be $3,927.63 (less withholdings) representing backpay, and $375.00, representing his liquidated and other damages. The remaining amount will be paid directly to the IRS. All other monies referenced in Paragraph 3(A), with respect to Hurrigan, shall be tendered to the IRS.

### 4. General Release:

A. For and in consideration of the total payment specified above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, with the exception of Releasor Hurrigan's currently pending Workers Compensation claim, the Releasors knowingly and voluntarily release and forever discharge the Releasees from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demand whatsoever in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown which the Releasors ever had, now have or may or might in the future have against the Releasees, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the effective date of this Agreement, and specifically, but not by way of limitation, to those claims arising by reason of or in any way connected with or which are or may be based in whole or in part on, or do or may arise out of or are or may be related to or with:

(i) the matter pending in the Northern District of Georgia – Civil Action No. 2:12-CV-03633;

(ii) employment of and/or termination of employment between the Company and the Releasors, including any issues related to payment of wages under the Fair Labor Standards Act;

(iii) unlawful acts of any kind arising under or in reliance upon any statute (federal, state or local);

(iv) deprivation of civil rights, unlawful acts of any kind, or discrimination under state, local or federal law or otherwise including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended; Civil Rights Act of 1991; and Americans with Disabilities Act;

(v) interference with or breach of contract (express or implied, in fact or in law), detrimental reliance, breach of duty of good faith and fair dealing (express or implied) and/or breach of contract of any kind;

(vi) retaliatory or wrongful discharge, breach of policy and/or public policy, bad faith discharge, negligence, negligent discharge, intentional or negligent infliction of emotional or mental distress, invasion of privacy, deceit, interference with advantageous relations, outrageous conduct, inducement, fraud, false imprisonment, assault, assault and battery, false arrest, malicious prosecution, breach of duty, libel, slander and/or tortious and/or criminal conduct of any kind;

(vii) interference with business relationships, contractual relationships or employment relationships of any kind;

(viii) loss of consortium;

(ix) attorneys' fees, expenses or costs pursuant to 42 U.S.C. § 1988 or as otherwise may be allowed by law, including pursuant to any statute, contract or common-law claim; and

(x) any and all other claims arising under law or equity.

Nothing in this agreement shall be construed as a waiver by Releasor Hurrigan of any of his rights pertaining to his currently pending Workers Compensation case.

B. Without limiting the generality of the foregoing, the Releasors acknowledge and covenant that, in consideration for the sums being paid and provided herein by the Company to the Releasors, the Releasors have knowingly and voluntarily relinquished, waived and forever released any and all rights, damages and remedies which might otherwise be available to the Releasors, including, without limitation, claims for contract damages of any type, back pay, front pay, emotional damages, mental damages, damages for anguish or anxiety, punitive damages, incentive pay, liquidated damages, special or consequential damages, lost benefits of any kind including without limitation, pension, life insurance, vacation pay, disability insurance, sick pay, severance pay or medical insurance or benefits, recovery of attorneys' fees, costs, expenses of any kind, with the exception of those related to Releasor Hurrigan's currently pending Workers Compensation claim.

C. It is further understood and agreed that this Agreement and the payment made hereunder constitutes full and final satisfaction of all claims of every nature, direct or indirect, against all persons, companies, or corporations, including those who are or might be held to be joint and/or successor entities, with any of the parties released hereby, as well as those to whom any of the parties released are, or may be held to be, liable by way of contribution or indemnity for the payment of all or any part of any claim arising out of, or directly or indirectly related to the claims set forth in this Agreement.

D. The Company agrees that, without limiting the generality of the foregoing, this Agreement does not release any worker's compensation claims Releasor Hurrigan may have, and this Agreement and has no affect on any of Releasor Hurrigan's rights related to workers' compensation claims.

5. **Covenant Not To Sue:**

The Releasors further covenant and acknowledge that neither the Releasors, nor any person, organization or other entity acting on the Releasors' behalf, has or will sue or cause or permit suit against the Releasees upon any claim released herein or to participate in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon or otherwise enforce or accept any judgment, decision, award, warranty or attachment upon any claim released herein. In the event of any claim by an agency or federal or state government or a claim by any person against the Releasees for conduct by the Company against the Releasors for any conduct arising prior to the effective date of this Agreement, the Releasors waive their right to personally recover any monetary amount in any such proceedings, and the Releasors covenant to immediately return to the Company any amounts paid to the Releasors pursuant to any such proceedings.

### 6. No Loss Of Consortium:

The Releasors represent and warrant that, at all times pertinent, no person sustained any loss of consortium, or has any claim whatsoever for any injury or damage alleged to have been sustained by the Releasors; and the Releasors further agree to indemnify, defend and hold harmless the Releasees hereunder from any action which may arise in connection therewith to include any attorneys' fees, expenses of any kind or court costs associated with any such action.

### 7. Knowing And Voluntary Waiver And Release:

A. It is understood and agreed that this Agreement is executed by the Releasors knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities or value of the Releasors' claims.

B. The Releasors also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement. The Releasors further acknowledge that consideration for this Agreement consists of financial payments and benefits to which the Releasors otherwise have no legal entitlement.

C. As part of the consideration for the conditions of the settlement as set forth above, the Releasors expressly warrant and represent that: (a) the Releasors are legally competent to execute this Agreement; (b) the Releasors have not assigned, pledged, or otherwise in any manner whatsoever sold or transferred, either by instrument in writing or otherwise, any claim, cause of action, or other legal right of whatever kind and nature, which the Releasors have or may have by reason of the incident described above or any matters arising out of or relating thereto; (c) there are no outstanding subrogation claims or liens of any type or character, by reason of the allegations detailed in Releasors' Complaint, including no lien or right of reimbursement for any healthcare-related expenses relating to or in any way connected with the claims asserted in the above-styled civil action, including but not limited to liens or rights created by or pursuant to agreement; state or federal law; O.C.G.A. §§ 44-14-470, et seq. and 49-4-148, et seq.; Medicare/Medicaid; TRICARE; CHAMPVA; ERISA; or employee benefit plan; and (d) all healthcare-related, medical, dental, pharmacy, hospital, nursing home, physician practice, and provider of traumatic burn care medical practice charges and bills incurred for treatment of injuries relating to or in any way connected with the claims asserted in the above-styled civil action for which a compromise and settlement has been made have been fully paid.

### 8. Right To Retain Advisor Or Counsel:

A. It is understood that the Releasors have the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and are advised to consult with legal counsel prior to signing this Agreement. The Releasors also acknowledge that, before signing this Agreement, the Releasors have read and fully understand each paragraph thereof. Any notice required to Releasors under this Agreement shall be satisfied by written notice to the undersigned counsel for the Releasors.

B. The Releasors acknowledge that, upon the effective date of this Agreement,

5 of 8

the Releasors will fully and irrevocably release any and all claims the Releasors may have against the Releasees as specified in this Agreement.

### 9. Entire Agreement:

A. This Agreement constitutes the entire agreement between the Releasors and the Releasees pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular manner whatsoever except by a writing duly executed by the Releasors and an authorized representative of the Company.

B. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

### 10. Effective Date:

This Agreement shall become effective and irrevocable upon its execution by the Releasors.

### 11. Successors And Assigns:

This Agreement shall be binding upon the Releasors and the Releasors' heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and shall inure to the benefit of the Releasees and their predecessors, successors and assigns.

### 12. Non-Admission:

The Releasors acknowledge that the payment set forth herein does not constitute any admission of liability on the part of the Releasees, by whom liability is expressly denied. This Agreement shall not be deemed an admission of liability or a violation of any law, rule, regulation or order, of any kind.

### 13. Miscellaneous:

A. The Releasors acknowledge that the Releasors have had sufficient time to consider whether or not the Releasors desire to enter into this Agreement.

B. This Agreement is executed with the full knowledge and understanding on the part of the Releasors that there may be more serious consequences, damages or injuries, which are not now known, and that any draft or benefits conferred herein to the Releasors in consideration of this Agreement are accepted as final. The Releasors further agree and represent that it is within the Releasors' contemplation that the Releasors may have claims against the Releasees of which, at the time of the execution of this Agreement, the Releasors have no knowledge or suspicion, but the Releasors agree and represent, without affecting the generality of the foregoing paragraphs, that this Agreement extends to all claims in any way based upon, connected with or related to the matters

described herein, whether or not known, claimed or suspected by the Releasors.

C. It is further agreed and understood that the Releasors will indemnify, defend and hold harmless the Releasees for all claims and damages, including attorneys' fees, resulting from the Releasors' respective material breach of this Agreement.

D. The Releasors agree to pay federal or state taxes, if any, which are required by law to be paid with respect to this settlement. The Releasors further agree to indemnify and hold the Releasees harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any government entity against the Releasees for any amounts claimed due on account of this Agreement or pursuant to claims made under any federal or state tax laws, and any costs, expenses or damages sustained by the Company by reason of any such claims, including any amounts paid by the Company as taxes, attorneys' fees, deficiencies, levies, assessments, fines, penalties, interest or otherwise.

E. The Releasors acknowledge that neither the Releasees nor their attorneys make any representation as to the tax consequences, if any, of the provisions of this Agreement.

F. It is agreed that neither the existence of this Agreement nor any of its provisions shall be offered in evidence by any of the parties hereto, or their agents, in any action or proceeding other than an action to enforce this Agreement.

G. This Agreement may be executed in multiple counterparts and all counterparts shall constitute one agreement binding on each of the parties hereto, regardless of whether each party hereto is a signatory to the same counterpart. Fax signatures in lieu of original signatures are acceptable.

IN AGREEMENT HERETO, the Releasors and the below representative of the Company set their hand and seal.

*[Signature: Robert Hurrigan]*  
Robert Hurrigan – Releasor

5/28/13  
Date

_____  
Edwin Lebron – Releasor

_____  
Date

_____  
Dana Scott Bryan

_____  
Date

described herein, whether or not known, claimed or suspected by the Releasors.

        C.    It is further agreed and understood that the Releasors will indemnify, defend and hold harmless the Releasees for all claims and damages, including attorneys' fees, resulting from the Releasors' respective material breach of this Agreement.

        D.    The Releasors agree to pay federal or state taxes, if any, which are required by law to be paid with respect to this settlement. The Releasors further agree to indemnify and hold the Releasees harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any government entity against the Releasees for any amounts claimed due on account of this Agreement or pursuant to claims made under any federal or state tax laws, and any costs, expenses or damages sustained by the Company by reason of any such claims, including any amounts paid by the Company as taxes, attorneys' fees, deficiencies, levies, assessments, fines, penalties, interest or otherwise.

        E.    The Releasors acknowledge that neither the Releasees nor their attorneys make any representation as to the tax consequences, if any, of the provisions of this Agreement.

        F.    It is agreed that neither the existence of this Agreement nor any of its provisions shall be offered in evidence by any of the parties hereto, or their agents, in any action or proceeding other than an action to enforce this Agreement.

        G.    This Agreement may be executed in multiple counterparts and all counterparts shall constitute one agreement binding on each of the parties hereto, regardless of whether each party hereto is a signatory to the same counterpart. Fax signatures in lieu of original signatures are acceptable.

    IN AGREEMENT HERETO, the Releasors and the below representative of the Company set their hand and seal.

_____      _____
Robert Hurrigan – Releasor      Date

*[signature]*      5/23/13
Edwin Lebron – Releasor      Date

*[signature]*      6/6/13
Dana Scott Bryan      Date

Representative for the Company

_Dana Scott Bryan_  6/6/13
Dana Scott Bryan, Individually  Date